**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | )    **Criminal Action No.** |
| v. | )    **04-10336-NMG** |
| | ) |
| | ) |
| JULIO CARRION SANTIAGO et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

The Superseding Indictment in this case charges 12 defendants in connection with a heroin distribution conspiracy. After a period of investigation, various search warrants were issued on the basis of an affidavit of Drug Enforcement Administration Special Agent Calice Couchman. Comprehensive searches were conducted pursuant to those warrants on October 15, 2004, and arrests were made in conjunction with those searches.

Defendant Pedro Alberto Miranda ("Miranda") moves to suppress evidence seized from 212 Wilder Street, Lowell, Massachusetts ("the Wilder residence"), where Miranda apparently resided with his girlfriend Paula Llano-Orrego ("Llano"), on the grounds that agents failed to knock and announce their presence before forcibly entering the premises.

-1-

I.    **Background**

Pursuant to warrants obtained on October 14, 2004, agents arrived at the Wilder residence in the early morning hours of October 15, 2004, to search the premises and arrest Miranda. Miranda and Llano lived in a two-bedroom apartment which made up the second floor of a two-story building.  Access to the apartment was available by a "front" set of stairs leading to the living room door and a "side" set of stairs leading to the kitchen door.

Officers executed the warrants at approximately 6:05 a.m., entering up the side stairs and through the kitchen door.  Once inside the Wilder residence, they arrested Miranda, searched the premises and seized various items including cell phones, a bottle of white powder, rubber gloves, masks and goggles.

After the warrants were executed, Special Agent Gregg Willoughby ("S.A. Willoughby"), the officer in charge of the search and arrest, wrote and submitted a report in which he stated that officers had forcibly entered the Wilder residence "[a]fter knocking and announcing 'police'".

At a hearing held in this Court on November 29, 2005, S.A. Willougby testified that at the time officers entered the Wilder residence, he was stationed alone at the front door, around the corner from the five other officers preparing to enter the residence through the kitchen door ("the entry team").  S.A.

-2-

Willoughby stated that he could hear the other officers clearly because he was only about ten yards away and it was quiet that morning, although it was raining.  He testified that he heard "loud pounding" on the kitchen door and then "police, police, search warrant".  He heard the pounding and announcement repeated and then the sound of the door being broken.  The agent estimated that between 20 and 30 seconds elapsed between the initial knock and announce and the forced entry.

About two minutes later, other officers let S.A. Willoughby into the apartment through the front door.  Inside, he saw what he thought was a freshly poured cup of coffee on the kitchen table and Llano fully dressed, appearing "ready to leave".

Two officers who had been part of the entry team, Lieutenant Gregory Dern ("Lt. Dern") and Sergeant William Canty ("Sgt. Canty"), also testified at the hearing.  Between 5:30 a.m. and 6:00 a.m. that morning, Lt. Dern and Sgt. Canty were stationed in a car directly facing the front of the Wilder residence.  Both officers testified that as they watched the second-floor apartment from their car, they could see a light being turned on and off through a window above the front door to the apartment.

Lt. Dern was the officer in charge of knocking and making entry to the Wilder residence.  He testified that he knocked on the kitchen door "very loudly" and then announced "police, open the door, we have a search warrant" in a "very loud" voice.  He

-3-

waited about 20 seconds, without receiving any response, and then knocked again and made the same announcement. Very quickly thereafter, he broke down the door with a battering ram. Lt. Dern testified that once he was inside the apartment he saw Llano fully dressed although he thought Miranda was in his underwear. He did not recall seeing a cup of coffee in the kitchen.

The testimony of Sg.t Canty was consistent with that of Lt. Dern in all material respects. Positioned immediately behind Dern outside the kitchen door, Sgt. Canty testified that Dern "slammed" the door with his hand several times and then yelled "police, search warrant, open the door". There was no response from within the apartment. After about 20 seconds, Lt. Dern repeated the pounding and announcement, at which point Sgt. Canty began to back down the stairs anticipating that Lt. Dern was about to hit the door with the ram. A "real short" amount of time after the second announcement, Lt. Dern broke down the door. Sgt. Canty said that when the officers entered, no occupant was standing close to the door inside.

Neither Lt. Dern nor Sgt. Canty took any notes or submitted a report relating to the execution of the warrant at issue.

Both Miranda and Llano submitted affidavits in which they stated that they did not hear the officers either knock or announce their presence on the morning of October 15, 2004, and that they simply burst into the apartment unannounced. At the

-4-

suppression hearing, the defendant cross-examined the

government's witnesses and presented argument but offered no oral

testimony.

## II.  **Analysis**

Police must ordinarily knock and announce their presence,

then wait a reasonable amount of time, before forcibly entering a

house to execute a search warrant.  18 U.S.C. § 3109; Richards v.

Wisconsin, 520 U.S. 385, 387 (1997) (citing Wilson v. Arkansas,

514 U.S. 927 (1995)); United States v. Antrim, 389 F.3d 276, 279

(1st Cir. 2004).  In addition to announcing their identity,

police must ordinarily also indicate their purpose for seeking

entry.  See Miller v. United States, 357 U.S. 301 (1958).

Unannounced entries may be reasonable where police

> have a reasonable suspicion that knocking and announcing
> their presence, under the particular circumstances,
> would be dangerous or futile, or that it would inhibit
> the effective investigation of the crime by, for
> example, allowing the destruction of evidence.

Richards, 520 U.S. at 394.  The government does not contend that

a reasonable unannounced entry was either made or warranted in

this case.

What constitutes a "reasonable" length of time for officers

to wait between knocking and announcing their presence and

forcibly entering the premises depends on the particular

circumstances, there being "no bright-line rule".  Antrim, 389

F.3d at 279 (citations omitted).  The First Circuit Court of

-5-

Appeals has noted that where the underlying crime involves drug distribution, courts have frequently "approved brief delays in the 15-to-20 second range". Id. at 280 (citations omitted). See also United States v. Garcia, 983 F.2d 1160, 1168 (1st Cir. 1993) (holding that a ten-second delay between announcement and forced entry was reasonable where the occupants of the residence were believed to possess cocaine, which is easily hidden or destroyed).

Other factors that courts rely upon in assessing whether officers waited a reasonable amount of time between announcement and entry include the size of the apartment, the time of day that the search is being executed and any other conditions that would bear upon the likelihood of a prompt response to agents' announcement of their presence. See Antrim, 389 F.3d at 281-82 (citing multiple cases).

The principal grounds for suppression that the defendant offered at the hearing was not that the officers had failed to knock or announce their identity but merely that officers had failed to announce the purpose for their seeking entry. The defendant contends that the officers' testimony that Lt. Dern yelled "search warrant" in addition to "police" should not be credited because no such statement of reason was included in S.A. Willoughby's report and the officers likely conferred about their testimony prior to the suppression hearing.

-6-

In response to the defendant's concern that officers had recently embellished their recollection of what had occurred on October 15, 2004, the Court instructed the government to search for and provide, if discovered, any notes taken during interviews by government counsel with the witnesses relevant to the matters at issue in the suppression hearing. The government provided to both the Court and the defendant notes taken by an earlier prosecutor on the case which indicate, albeit in somewhat cryptic fashion, that Lt. Dern reported to her that he had used the word "search" in addition to "police" after pounding on the door in an attempt to gain entry to the Wilder residence.

After considering the memoranda provided by the parties, the evidence offered at the hearing and the notes subsequently submitted by the government, the Court concludes that the officers satisfied their obligation of knocking and announcing. Consequently, Miranda's motion to suppress will be denied.

**ORDER**

Based on the foregoing memorandum, the motion to suppress of defendant, Pedro Alberto Miranda, (Docket No. 128) is **DENIED**. **So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated: December **12**, 2005

-7-